EDITH H. JONES, Circuit Judge, concurring:
The panel agrees that the Gee decision is binding law for our circuit at present, but I urge reconsideration en banc. Gee is inconsistent with O'Bannon , and it makes no practical sense to hold that a Medicare provider charged with misfeasance by state regulating authorities may simply bypass state procedures, which are required by the Medicaid statute, and use patients as stalking horses for federal court review of its status. That the arbitrary and capricious standard of review governs such review in federal court is a second-best solution to the legal necessity of aligning our precedent with the Supreme Court's holding. Finally, despite being litigated with the trappings of the abortion debate, this is fundamentally a statutory construction case, not an abortion case. Gee v. Planned Parenthood of Gulf Coast, Inc., --- U.S. ----, 139 S.Ct. 408, 409, --- L.Ed.2d ---- (2018) (dissenting from denial of certioriari).
Prudential and practical objections may be made to this recommendation. From a prudential standpoint, the Supreme Court denied certiorari in Gee in the past month, and this court rejected en banc reconsideration of the decision in 2017. Therefore, it would follow, the states of this circuit *570 should be bound by judicial inertia to a plainly incorrect statutory interpretation. Pragmatically, there is no harm, no foul, because the nature of arbitrary and capricious review ought ordinarily shield the decisions of state authorities who claim evidentiary and legal support when attempting to sanction or terminate provider status. In my view, none of these rationales suffices.
Start with this evenly divided court's denial of en banc reconsideration. See Planned Parenthood of Gulf Coast v. Gee, 876 F.3d 699 (5th Cir.2017) (Elrod, J., dissenting). At the time of that denial, the Gee decision claimed support from three other circuits, but the Eighth Circuit had rejected the creation of a patient's implied private right of action under Section 1396a(a)(23). Compare Planned Parenthood of Ariz., Inc. v. Betlach , 727 F.3d 960 (9th Cir.2013) ; Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health , 699 F.3d 962 (7th Cir.2012) ; Harris v. Olszewski , 442 F.3d 456 (6th Cir.2006) (all finding a private right of action), with Does v. Gillespie , 867 F.3d 1034 (8th Cir.2017) (rejecting a private right of action). Importantly, however, this court's even split indicated our recognition that the statutory interpretation issue posed in Gee is seriously debatable. A refusal to vote a case en banc under such circumstances is a victory of sorts for the panel decision, but it reflects no endorsement by the majority of active judges. Reconsidering the en banc decision, especially in light of the Supreme Court's recent action, would secure a clear majority decision on this surely recurring issue.
In December 2018, the Supreme Court declined certiorari in Gee and the Tenth Circuit's Andersen decision, both of which implied a patient's private right of action to challenge Medicaid providers' regulatory terminations. See Planned Parenthood of Kansas v. Andersen, 882 F.3d 1205 (2018). A conflict exists with the Eighth Circuit's contrary holding, yet the Supreme Court left in place the circuit conflict. It is a fair bet that the Court's avoidance indicates considerable uncertainty about the statutory issue. To restore the uniformity of federal law, the conflict must eventually be addressed. Until that happens, three different courses of action are afforded to Medicaid providers in different states. In states where no circuit court decision has approved private plaintiffs' ability to challenge the providers' sanctions, the providers must repair to Medicaid-required state administrative and judicial procedures. In the Tenth Circuit, providers may use private plaintiffs' federal court suits, level of federal review undetermined, as an alternative to undergoing state-crafted procedures. And in this circuit, providers have alternative recourse to private plaintiffs' suits under the arbitrary and capricious standard of review. Tens of thousands of provider entities are subject to the Medicaid program's detailed scheme of integrated federal and state regulation.
That Planned Parenthood providers achieved recognition of implied private plaintiffs' actions should not detract from the program-wide uncertainty spawned by this circuit conflict. Equally to the point, the lower courts remain obliged to undertake careful statutory review while the issue is undecided, especially if the statute, properly construed, offers providers no alternative federal court remedy. The Court's denial of certiorari, in other words, strengthens the propriety of this court's reconsidering Gee en banc.
The pragmatic argument for denying en banc relief would seem to include two parts. This court's adoption of the deferential arbitrary and capricious standard means that state authorities will ordinarily be able to defend their program termination *571 decisions successfully in federal court, reducing the friction between federal courts and state Medicaid administrators. Thus, it would be argued, the cost of reconsidering Gee , especially if Gee was correctly decided, is higher than the cost of federal litigation pending a definitive Supreme Court decision. But there is a second wrinkle here in that whether to apply an arbitrary and capricious standard is a res nova decision by this panel made necessary by Gee. The parties strenuously disputed the standard of review. As long as a circuit split persists, other courts weighing in on the standard of review may disagree with this panel's decision. Following the Gee case thus entails ongoing legal uncertainty.
Another pragmatic consideration, however, favors en banc reconsideration: the complexity and cost to state agencies that administer and regulate Medicaid. The program is already one of the most expensive components of state budgets. Regulating providers comprises comprehensive federal and state medical, and ethical dictates as well as parameters for facilities that provide patient care. Authorizing lawsuits by patients to challenge their providers' terminations burdens state agencies with redundant and intrusive oversight while the high cost of federal litigation displaces more efficient uses of state resources. As Justice Thomas also noted in his dissent from denial of cert., "the looming potential for complex litigation inevitably will dissuade state officials from making decisions that they believe to be in the public interest." 139 S.Ct. at 409. State courts, moreover, are well suited to handle these cases based on their more intimate familiarity with the agencies, the regulation of the practice of medicine, and state administrative law-as was contemplated in the Medicaid statutes' prescription of coordinate state responsibilities for the program. If Gee is incorrect, these practical costs will be avoided.
Having explained why there should be no impediment to our rehearing this case en banc in order to reconsider Gee , I repeat briefly the arguments that others have fulsomely developed. Gee is inconsistent with the Supreme Court's decision in O'Bannon and in tension with numerous other provisions of the Medicaid statute.
Judge Owen, dissenting in Gee , argued that O'Bannon precluded the individual plaintiffs' assertion of a private right of action to challenge LDHH's termination decision. See 862 F.3d at 475 (Owen, J., dissenting). The majority opinion asserted that in O'Bannon , "the patient-plaintiffs' injuries were alleged to stem from a deprivation of due process rights," and "[i]n contrast, the Individual [ Gee ] Plaintiffs here assert the violation of a substantive right." Id. at 460 (citations omitted). Judge Owen pointed out the fundamental logical flaw with this reasoning: the majority "fail[s] to appreciate that there is no right to due process unless there is a substantive right that may be vindicated if adequate process is accorded." 862 F.3d at 475. The majority completely missed the dissent's primary point that O'Bannon rejected the notion that Section 1396a(a)(23) creates any substantive liberty or property right. Id. at 476.
Judge Owen criticized the majority's broad assertion that only a total termination of a Medicaid provider from all medical services would render the provider "unqualified" for purposes of Section 1396a(a)(23). She cited, inter alia, Section 1396a(p)(1), a provision that authorizes a state to "exclude any...entity [from Medicaid] for any reason for which the Secretary could exclude the...entity from participation in [several federal programs listed]." And she referenced multiple other reasons justifying state termination decisions under the Medicaid statute itself. Id. at 477.
*572 Judge Owen also rebutted the majority's claim that in O'Bannon , the state had "totally" decertified the nursing center, whereas in Gee , "there was no decertification decision." Id. at 472. The majority concluded, "[w]hen, as here, a state terminates only a Medicaid provider agreement, independent of any action to enforce statutory and regulatory standards, O'Bannon is inapposite." Id . The majority's error was a "shaky" basis for distinguishing the Supreme Court precedent, according to Judge Owen, because the Court never specified that the nursing home had been totally decertified by the state. 862 F.3d at 483.
Six other judges on this circuit found Judge Owen's dissent sufficiently persuasive to join a dissent from the denial of rehearing en banc. See Planned Parenthood of Gulf Coast, Inc. v. Gee , 876 F.3d 699, 700 (5th Cir.2017) (Elrod, J., dissenting from denial of rehearing en banc) (explaining that Gee "is directly at odds with the Supreme Court's holding in O'Bannon "). And Judge Elrod's dissent added that "the panel majority opinion's reasoning is not only at odds with O'Bannon but also with the entirety of the statutory framework in 42 U.S.C. Section 1396a." 876 F.3d at 701.
There are other reasons for rejecting Gee . The Eighth Circuit held in even more detail, albeit in a split decision, that Section 1396a(a)(23) confers no private right of action on patients concerning the termination of a Medicaid provider's state agreement, because to do so would place that provision in conflict with related Medicaid provisions. See Does v. Gillespie, 867 F.3d 1034, 1041-1043 (8th Cir.2017) (referring to the lack of an individual entitlement conferred by the provision itself and 82 related provisions governing State duties to the federal program; the availability of other means to enforce the State's obligations under the Medicaid Act and the resulting likelihood of conflict between the implied individual remedy and a provider's administrative and state judicial remedies; and the "aggregate" or "substantial compliance" nature of the federal government's oversight duties). All of these structural indications, Judge Colloton explained, conflict with the requirement set out in Gonzaga v. Doe , that a plaintiff relying on federal law to underpin a Section 1983 case must show that "Congress clearly intended to create an enforceable federal right." Does, 867 F.3d at 1039 (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ).[1]
In Andersen , Judge Bacharach dissented on the basis that Section 1396a(a)(23) does not "unambiguously" provide an implied private right of action, contrary to Gonzaga , because any "right" conferred on patients in that provision conflicts with the state's broad rights under Medicaid "to exclude an individual or entity from Medicaid for any reason or period authorized by State law." 42 C.F.R. § 1002.3(b), interpreting 42 U.S.C. § 1396a(p)(1). Andersen, 882 F.3d 1205, 1243-45 (10th Cir.2018). Judge Bacharach would accordingly distinguish between situations where a state attempted to prohibit all Medicaid funding to abortion providers (contrary to law) and situations like that in Andersen , and in this case, where neutral regulations were violated by the providers.
Finally, Justice Thomas and two colleagues noted the "significant implications" of the question "whether Medicaid recipients have a private right of action to challenge a State's determination of 'qualified' Medicaid providers" under *573 Section 1396a(a)(23) and Section 1983. Gee , 139 S.Ct. at 408. Justice Thomas noted the threats to state administration of Medicaid programs, not only from the financial burdens of litigation and deterrence of sound management decisions, but also because private patients' suits "give Medicaid providers 'an end run around the administrative exhaustion requirements in [the] state's statutory scheme.' " Id . at 409, (quoting 876 F.3d at 702 (Elrod, J., dissenting) ).
Given the still-unsettled state of the law and the absence of precedential or pragmatic disincentives to rehearing en banc, these persuasive arguments deserve the attention of our full court. I respectfully request rehearing en banc to reconsider whether Section 1396a(a)(23) creates a private right of action on behalf of Medicaid patients to challenge the termination of their providers' contracts by the States.

Judge Shepherd, concurring in the Eighth Circuit decision, echoed Judge Owen's sentiments about O'Bannon as an independent ground for rejecting plaintiffs' implied private right of action.